254 N.J. Super. 634 (1992)
604 A.2d 179
F. CAROL CLEGG AND ROBERT J. CLEGG, HUSBAND AND WIFE, INDIVIDUALLY AND T/A SMELTZER REALTY CO., PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY AUTOMOBILE FULL UNDERWRITING ASSOCIATION, BY AND THROUGH ITS SERVICING CARRIER, CIGNA INSURANCE COMPANY, BOTH LICENSED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND MARY SMELTZER, DEFENDANTS-APPELLANTS, AND CAMDEN FIRE INSURANCE COMPANY ASSOCIATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 13, 1992.
Decided March 12, 1992.
*635 Before Judges GAULKIN, ROBERT MUIR, Jr. and LANDAU.
Yampell, Nicodemo & Caruthers, attorneys for appellant New Jersey Automobile Full Insurance Underwriting Association (Donald Caruthers, III, on the brief).
Asbell & Kushner, attorneys for respondents F. Carol and Robert J. Clegg, individually and t/a Smeltzer Realty Co. (Andrew Kushner, on the brief).
Quinlan, Dunne & Higgins, attorneys for respondent Mary L. Smeltzer (Timothy J. Higgins, on the letter brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This appeal requires us to determine an issue respecting proration of underinsured motorist ("UIM") coverage where the insured owner of one car, his spouse and an independently insured passenger suffered damages resulting from an accident with an underinsured vehicle, and each policy required proration of UIM benefits under defined circumstances.
Our opinion affirms a Law Division determination which required that UIM coverage under the owner's policy be applied first against the shortfall in recovery suffered by him and his wife before proration with the passenger's own UIM policy coverage.
*636 On November 18, 1989, plaintiff Carol Clegg ("Carol") was driving a motor vehicle registered in the name of her husband, plaintiff Robert J. Clegg ("Robert"), when it was struck by another vehicle owned and operated by William Kovalski, now deceased. Defendant Mary Smeltzer ("Smeltzer") was a passenger in the Clegg vehicle at the time of the accident. The parties appear to concur that Kovalski's negligence was the sole cause of the accident, although the record does not confirm whether such a determination has been conclusively made. Carol and Smeltzer were seriously injured. Robert was deprived of Carol's services.
Kovalski's automobile insurance policy issued by Liberty Mutual Insurance Company provided for $100,000 combined single limit coverage. The Cleggs and Smeltzer recovered $43,688.33 respectively from the Kovalski policy, representing an equal allocation of the available benefits under that policy after payment to the lessor for damage to the Kovalski vehicle.
At the time of the accident, Robert and Smeltzer each were insured for single limit UIM coverage of $500,000 under their respective automobile policies. Since the institution of this action, an arbitration panel has determined Carol's damages to be $575,000, and Robert's loss of consortium damages to be $75,000. Smeltzer's insurance carrier has stipulated that her damages exceed $500,000.
Robert Clegg, individually and t/a Smeltzer Realty Co., is the insured named on the Declarations sheet of a policy issued by defendant Camden Fire Insurance Association ("Camden"). As we note infra, Carol is treated identically in the Camden policy with the named insured shown in the Declarations, because she is a spouse resident in the same household. By contrast, Smeltzer is an insured person under the Camden policy because of her status as an occupant of a covered auto. Smeltzer's own UIM coverage is written under a policy issued by defendant New Jersey Full Insurance Underwriting Association ("JUA").
*637 The present controversy arose when the Cleggs and Smeltzer presented UIM claims to their own carriers for the full amount of their respective UIM coverages. The claims of each would exhaust their own UIM coverage. Because of proration provisions in the two policies, however, a question arose whether Smeltzer was entitled to share equally in the UIM coverage provided under the Clegg policy.
The Cleggs sought arbitration with Camden pursuant to a clause in their contract of insurance. Unsuccessful in effecting arbitration, the Cleggs filed an Order to Show Cause and Verified Complaint in the Law Division naming as defendants Camden, JUA and Smeltzer. After hearing, the trial judge entered an Order for Judgment which, among other things, compelled arbitration of the Cleggs' claim and declared that JUA was not entitled to pro rata or other contribution from the Camden policy. Finding UIM coverage to be "personal" to the insured, the judge ruled that each policyholder should recover under his own policy and thereby receive what he had bargained and paid for. In the judge's view, the proration provisions were not authorized by statute, legislative intent or interpretive case law, and should not be enforced to reduce the Clegg's recovery for their own injuries to less than the UIM limits they purchased.
JUA then filed this appeal, contending that Smeltzer, as a passenger, was entitled to share equally in the UIM benefits provided under the Cleggs' policy with Camden.[1] Pending disposition of the appeal, each carrier has paid its own policy-holders 50% of their unsatisfied UIM claim and deposited the remaining 50% with the court.
The policies in issue each contain a clause which refers to proration of benefit payments when more than one policy covers a given loss. The Camden policy provides:

*638 OTHER INSURANCE * * *
For any covered auto you don't own, the insurance provided ... is excess over any other collectible insurance.
When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

(emphasis supplied). The corresponding provision of Smeltzer's JUA policy reads:
OTHER INSURANCE
If there is other similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

However, any insurance we provide with respect to a vehicle you do not own ... shall be excess over any other collectible insurance.
(emphasis supplied).
The trial judge's characterization of UIM coverage as "personal" to the insured has some support in that the coverage is linked to the insured rather than to the covered vehicle. See Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 241, 412 A.2d 755 (1980). UIM furnishes coverage both supplemental and optional, "provid[ing] as much coverage as the insured is willing to purchase," Nikiper v. Motor Club of America, 232 N.J. Super. 393, 399, 557 A.2d 332 (App.Div.), certif. den., 117 N.J. 139, 564 A.2d 863 (1989), for his or her protection subject only to the owner's policy liability limits for personal injury and property damage to others. See N.J.S.A. 17:28-1.1b. The UIM mechanism assures that an insured will receive benefits up to the amount contracted for, whether these come from the tortfeasor's policy or from that policy coupled with his own. See Landi v. Gray, 228 N.J. Super. 619, 624, 550 A.2d 768 (App.Div. 1988).
Whether the Cleggs' UIM coverage under their policy must be prorated hinges largely on the construction given to the "same basis" language of their policy with Camden. Under its terms, Carol is "named insured,"[2] to be treated identically with *639 her husband for all coverages provided. Smeltzer's basis for insurance under the Cleggs' UM/UIM endorsement, however, is only as an occupant of a vehicle covered by the policy.[3] Thus, Smeltzer is not insured "on the same basis" as the Cleggs. Whether the Camden policy is "similar insurance" within the meaning of the JUA policy may be more uncertain, but we do not see this as relevant in determining primacy of the Cleggs' UIM claim to the full extent of their own policy. In short, any unused portion might be "collectible" by Smeltzer on a prorated basis but only if the primary insurance afforded to those insured "on the same basis" under the Camden policy is first applied for the benefit of the named insureds who purchased the coverage.
This accords with our long-standing practice of interpreting policy provisions based upon objectively reasonable expectations of the insureds. Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35, 548 A.2d 188 (1988). Such reasonable expectations may govern construction even in absence of ambiguity, in recognition of the generally one-sided nature of insurance contracts. See id., 112 N.J. at 35-36, 548 A.2d 188.
*640 Given the discretionary nature of UIM coverage, a purchaser would reasonably and objectively expect that he is buying such protection up to the declared limits primarily for himself and his resident spouse. An intention to prefer passengers to the purchasers' own interests is, in our view, unrealistic and not objectively reasonable. For most purchasers of insurance, passengers would be but incidental beneficiaries of the UIM contract. This interpretation is borne out by the automobile insurance Buyer's Guide, mandated by N.J.S.A. 39:6A-23 and distributed to each prospective purchaser. The description of UIM emphasizes the personal nature of the security afforded and the apparent certainty of available benefits to the amount purchased:
When you buy uninsured motorist coverage, you are also provided coverage to protect you[4] from those motorists who are underinsured. If you are in an accident caused by such a motorist, underinsured motorist coverage will pay damages up to the difference between your underinsured motorist coverage limit and the other driver's liability coverage limit.
N.J.A.C. 11:3-15.6.
To construe the policies, as JUA urges, to permit proration of benefits payable to Smeltzer operates to deny the Cleggs full benefit of the first-party coverage they were reasonably entitled to believe they had purchased. Given this construction, Smeltzer would not have "collectible" UIM insurance available from the Clegg policy, unless the Cleggs' own damages were less than $500,000.
Our holding, we believe, harmonizes the language of the policies with that of the statute which authorizes it. N.J.S.A. 17:28-1.1b refers to provision of UIM coverage to "the named insured." Id. Paragraph 17:28-1.1e of the statute defines "underinsured" in terms of a comparison of the tortfeasor's available liability limits and the UIM limits under the policy "held by the person seeking that recovery," i.e. the policyholder. *641 N.J.S.A. 17:28-1.1e. See also Gold v. Aetna Life & Casualty Ins. Co., 233 N.J. Super. 271, 276, 558 A.2d 854 (App.Div. 1989).
Our opinion does not reach nor approve the trial judge's apparent view that UIM proration provisions are unauthorized by statute or precedent. It is unnecessary for us now to resolve what the proration rights of JUA might have been were the Cleggs' damages lower than their UIM maximum.
Affirmed.
NOTES
[1] Camden has not participated in this appeal.
[2] Page 1 of the Camden policy reads:

AGREEMENT
In return for payment of the premium ..., we agree with you as follows:
DEFINITIONS
Throughout this policy, "you" and "your" refer to:
1. The "named insured" shown in the Declaration, and
2. The spouse if a resident of the same household.
"We", "us" and "our" refer to the Company providing this insurance.
[3] The second page of the Uninsured and Underinsured Motorists Insurance endorsement to the Camden policy, arguably in descending order of claim upon available UIM limits, specifies:

D. WHO IS INSURED
1. You [i.e. named insured and his spouse, see n. 2, supra.] or any family member.
2. Anyone else occupying a covered auto ...
3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.
[4] As noted in n. 2, supra, "you" means the named insured and resident spouse, at least to the holder of a Camden policy.